*130 fÍARii, Judge.
I concur in the opinion delivered in this case by Judge Henderson, who has gone into a more full examination of it, than I propose doing.
By an act of the Legislature, passed in the year 1821, (eft. 12 sec .2,) it is declared that the Supreme Court shall possess the same power to grant new' trials, as well upon matters of fact as matters of law', as the Superior Courts of Law' now have, except in criminal cases. If the present question had occured during the existence of that law, it would not only be proper, but incumbent upon us, to examine the evidence in the present case, and if upon such examination, we should ascertain that the verdict was against evidence, to grant a new trial. But this act was repealed by an act passed in the succeeding year, (eft. 32.) This Court then possesses the power only of deciding such questions of law as shall be presented to it. It is therefore to the points of law decided by the Judge, and not to the facts submitted to and passed upon by the Jury, that our attention is to be directed ; it follows of course, that if in this case the Jury found a verdict contrary to the law given them in charge by the Judge, the Judge only, and not this Court, can grant a new trial on thap account. But if the Judge gives a charge to the Jury as to the law of the case, and they find a verdict accordingly, the person against whom that charge is given, has a right to have its correctness examined in this Court. _ It is therefore our province to enquire, whether the Judge charged in favor of the Plaintiffs against the law of the case, when ho ought to have charged in favor of the Defendant.
As to the point respecting the ninety-two days, the Judge instructed the Jury, that as to the days of grace, if the Defendants had the use of the money for ninety-two days, and if the Bank only calculated legal interest for that time, it was not usurious. I am not prepared to say that the charge is wrong in this respect, because although, if a quarter of a year’s interest was charged *131 lor eighty-eight days, it would be usurious, yet it was an universal rule of the Sank, to allow three days of grace, and it is admitted that a quarter’s interest for ninety-one days, is not usurious.
It is alleged again, the bond for renewal was dated and carried interest on the day the last note became due, and that the latter note carried interest on that day, which amounted to more than legal interest. This at first view seems plausible, but it requires examination. If the contract with the borrower was that renewals should take place at stated times, and it was his right to renew, the conclusion would be correct that it was usury, but this does not appear to be the case ; the Bank might renew or not at its pleasure. The contract of lending, imposed no obligation upon it to renew, it might sue upon the bond discounted, when it became due. Viewing then the bond for renewal as a distinct contract, the matter stands thus: a person owes the Bank a debt— on the dáy it comes due he pays it, and takes up his bond; on the same day he borrows another sum of the Bank, for which he gives his bond, this is no more usury than if a stranger had borrowed the latter sum, although the bond taken up and the bond given, both boro interest on the same day. It is possible however, that this might be converted into a contrivance to elude the statute of usury. When it shall be so understood, it may have a very different construction given to it.
But it is alleged, that the Judge erred when lie instructed the Jui’y, that deducting the interest at the time of discounting the note, was not usurious. This is a question of momentous concern to the State, and one which deeply involves in its solution, the interest of its citizens. Was it a question of the first impression, I would say that the charge of the Court was erroneous, or was it a case between one.citizen and another, or a cale between the Bank and a citizen, contrived to evade the statute of usury, I would still say the charge was erro- *132 neons. But when I reflect upon what Banking instila-tions now are, and what they have been and survey their history, I am led to pause.
jn England, the statutes against usury are very rigid, and much like our own act,- they all prohibit taking more than a certain sum per cent, for the forbearing or giving day of payment for one year for any given sum. In England, in all their Banks and Banking institutions, the universal rule has.been, and now is, to take interest in advance. In the old and new Bank of the United States, the same rule has prevailed — the same may bo said of the local Banks in the different states j the legality of the rule has been established in the Supreme Court of the United States, and in all the state Courts, (as I understand) which have undertaken to decide the question ; the practice has continued for a series of years in full-view of the National and State Legislatures, ami has acquired not only a judicial, but a legislative sanction. To the weight of such high authority, I feel myself bound to submit, especially, when I reflect upon the ruinous consequences, which would follow a contrary decision. It has been argued that in the Banks alluded to, bills of exchange and promissory notes only, were so discounted, but that this is the case of a bond ; my answer is, that bonds with us are made negotiable, and placed upon the same footing with promissory notes, and in principle, I think there is no difference between them as far as they relate to the subject under discussion. In conclusion, the remark may pass for what it is worth, the Defendants have paid no more than what they owed, and the Plaintiffs have received no more than what was legally due them. I think the rule for a new trial should be discharged.
Tati,or, Chief-Justice, concurred.
Judgment aeeirmeb.